PAUL L. REIN, Esq. (SBN 43053)
AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:  510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
SARAH NOWELL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH NOWELL<br><br>    Plaintiff,<br><br><br>    v.<br><br><br><br>JAN S. LUKAC, M.D., INC. dba BREA EYE CARE,<br><br><br>    Defendant. | **CASE NO.** 8:22-cv-00262<br><u>**Civil Rights**</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1.  **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>2.  **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>3.  **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff SARAH NOWELL complains of Defendant JAN S. LUKAC, M.D., INC. dba BREA EYE CARE, and alleges as follows:

1.     **INTRODUCTION:**   Employees at Brea Eye Care, including office staff and medical staff, told Plaintiff she could not have both her service dog and her mother with her during eye appointments, despite needing them each for different reasons. This, despite the service dog being plainly marked as such and even though there was ample space for the three to be in the appointment together with the doctor. When Plaintiff asserted her rights under the ADA to have her service dog with her during her appointments, the employees refused to allow Plaintiff's mother to accompany her at the appointments.  When Plaintiff insisted on having her

mother accompany her as is necessary due to her disability, Defendant's employees refused to allow her to have her service dog accompany her.  As a result of Defendant's failure to implement proper a service dog policy and lack of employee training, Plaintiff was denied equal access to care, and subject to the humiliation and danger of twice having a panic attack in front of other patients in the waiting room of Brea Eye Care.

2.     As a result of Defendant's illegal acts, Plaintiff suffered denial of her civil rights and suffered physical, mental and emotional damages.  Plaintiff has been treated at Brea Eye Care for years, but she fears returning with her service dog to receive necessary treatment until the policies of Brea Eye Care are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training. She has brought this lawsuit force Defendant to change its discriminatory and illegal policies, and to compensate her for threatening to refuse her treatment, significantly delaying her treatment, and causing her to have multiple panic attacks because she is a disabled person who needs the assistance of her qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at the Brea Eye Care.

3.     **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

4.     **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

5.     **INTRADISTRICT:**  This case should be assigned to Southern Division as the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

6.     **PARTIES:**  Plaintiff Sarah Nowell is a "qualified" physically disabled person. She suffers from chronic pain, major depressive disorder, anxiety, panic disorder, and post-traumatic stress disorder.  Plaintiff relies upon her service dog, a Golden Retriever named "Ty," to assist her with certain tasks, 1)  including providing deep pressure therapy if Plaintiff has a

panic attack, 2) creating a barrier between Plaintiff and any approaching stranger, 3) alerting Plaintiff to the presence of strangers approaching from behind her, and 4) retrieving objects from the floor for Plaintiff.  Ty has been professionally trained as a service dog, and Plaintiff reinforces that training daily.  Ty wears a vest and tag that clearly identifies him as a service dog.  Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

7.     Defendant JAN S. LUKAC, M.D., INC. dba BREA EYE CARE, is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business known as Brea Eye Care where Plaintiff receives her ophthalmologist services located at 380 West Central Avenue, Brea, California.

8.     Brea Eye Care is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

9.     **FACTUAL STATEMENT:**  Plaintiff is a person with multiple disabilities who regularly visits Brea Eye Care for ophthalmological care.  Plaintiff has been working with her service dog Ty for over two years.  Ty is a Golden Retriever who was professionally trained to be a service dog by Canine and Me.  Plaintiff has also trained and continues to train Ty to serve her specific needs throughout their relationship.  Ty is specifically trained to assist Plaintiff with numerous tasks including helping her control her symptoms of anxiety by providing deep pressure therapy for Plaintiff at the first sign of a panic attack to ground Plaintiff.

10.     Ty is a working dog; he is not a pet.  Plaintiff and Ty have trained extensively together, and they supplement that training daily.  Plaintiff takes Ty everywhere with her in public.  It is important they stay together at all times because (a) Ty provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  Where Plaintiff goes, Ty goes.  Below is a photograph of Ty as she looked when he and Plaintiff were denied access at Brea Eye Care:



11.     It is self-evident to any reasonable person that TY is a service dog and should be allowed to accompany Plaintiff wherever she goes.  This is also indicated by bright white letters against a black background that read, "SERVICE DOG," across her harness.

12.     On July 30, 2021, Plaintiff was diagnosed with Covid-19.  She was hospitalized due to complications of the illness, and while she was in the hospital, she developed an infection at a site where she was administered intravenous fluids by hospital staff.  The infection turned into sepsis, and Plaintiff was hospitalized until August 9, 2021, while the infection resolved. After Plaintiff was released from the hospital, she began to lose her eyesight which her physicians told her was a result of Covid-19.

13.     Plaintiff was terrified that she would have permanent sight loss, so she made an appointment to see her regular ophthalmologist, Dr. Lukan of Brea Eye Care, as soon as possible. Plaintiff had been treated by Dr. Lukan for many years prior to the Covid-19 pandemic, but she had not seen him for a few years.  Plaintiff had not yet begun to work with a service dog when she had previously treated at Brea Eye Care.  However, she did not foresee any problems since it is her protected right to be accompanied by her service dog at any public accommodation.

14.     Plaintiff made an appointment at Brea Eye Care for August 31, 2021.  She

informed the employee who assisted her in scheduling her appointment that she needed to be accompanied by her mother during the appointment because she relies on her mother to understand and remember the diagnoses and treatment proposals from medical professionals. Plaintiff explained that she has difficulty remembering complicated instructions during stressful situations such as medical appointments (particularly when she is worried about losing her eyesight).  Defendant's employee told Plaintiff that it would not be a problem for her mother to accompany her to the appointment.

15.     On August 31, 2021, Plaintiff arrived at Brea Eye Care for her appointment with her mother and Ty.  Ty was wearing a blue vest which clearly identified him as a service dog. Upon entering the office, Plaintiff approached the reception desk to sign in for her appointment. The receptionist immediately said, "You didn't tell me you were bringing a dog."  Plaintiff explained that Ty is her individually trained service dog and therefore allowed to accompany her in public places.  The receptionist allowed Plaintiff to fill out the necessary paperwork and have a seat in the waiting room.

16.     A different employee came to take Plaintiff form the waiting room to the examination room for her appointment.  When Plaintiff, Ty and Plaintiff's mother all got up to go to the examination room, the employee told Plaintiff that either her mother or Ty would have to stay in the waiting room during her appointment because it was the policy at Brea Eye Care that she could not have both her service dog and a support person in the examination room.  Plaintiff explained that Ty and her mother provided different service for her but that she needed both of them with her in order to have full and equal access at Brea Eye Care.  Defendant's employee refused to allow Plaintiff out of the waiting area with both her mother and her service dog.

17.     Plaintiff continued to attempt to advocate for herself, but Defendant's employee refused her request to have her service animal and mother accompany her.  Finally, the employee said that she would take Plaintiff and Ty to the area where she would administer the pressure test on Plaintiff's eyes and then after Plaintiff was settled in an examination room the employee would allow her mother to join her.  Plaintiff agreed to this scenario and took Ty with her to the pressure testing area.  After the testing was complete, Defendant's employee escorted Plaintiff to

an examination room. Plaintiff immediately asked the employee to send her mom into the examination room.  Defendant's employee left, and one of the doctor's entered the room. Plaintiff asked the doctor to wait for her mother to join her before he explained the potential cause of her sight loss and any treatment options because she has difficulty understanding and remembering complex matters during stressful situations.  The doctor told Plaintiff that she did not need her mother, and he continued to provide information and treatment to Plaintiff. Plaintiff became very upset and began to exhibit symptoms of the onset of a panic attack.  A second doctor came in to see Plaintiff, and he also refused to allow her to have her mother in the examination room.  Plaintiff was beginning to exhibit the signs of a full-blown panic attack at this point.  She was crying and having difficulty maintaining normal breathing.

18. The appointment concluded. Plaintiff has almost no memory or understanding of what either doctor explained to her during the appointment.  She met her mother in the waiting room, and they both walked out of Brea Eye Care to get on the elevator.  However, Plaintiff was unable to get on the elevator because she was having a panic attack. Plaintiff had to sit down, and Ty began to administer deep pressure therapy as he was trained to do.  Plaintiff had to take some anti-anxiety medication and wait for 20 minutes until she was calm enough to proceed to their car and drive home.

19. Plaintiff had a follow up appointment at Brea Eye Car on September 21, 2021. This time, Plaintiff was deterred from bring her service dog with her due to the treatment she had experienced at her last appointment.  Essentially, Plaintiff felt, based upon her experience at the previous appointment, that she had to choose between having her mother with her or having Ty with her at the appointment.  Although Plaintiff relies on Ty to keep her calm and assist her during times of high anxiety, she absolutely needed someone at the appointment to listen to the diagnoses and treatment because she could not remember anything that happened during the first appointment.

20. On September 21, 2021, Plaintiff and her mother drove to Brea Eye Care and entered the waiting room together.  Plaintiff checked-in for her appointment at the reception desk and completed the necessary paperwork.  Plaintiff and he mother then waited for her appointment

6

time. Defendant's employees had no issue with allowing Plaintiff's mother in the testing area or examination room at the second appointment when Plaintiff was not accompanied by her service dog.

21.     Plaintiff again saw both doctors during her appointment. One of the doctors, on information and belief Dr. Doh, commented that Plaintiff seemed calmer at this appointment. Dr. Doh told Plaintiff, "Your mother is allowed to come in with you because you need her to keep you calmer." He told her to tell the employees that "Dr. Doh said it's okay" to have her mother accompany her to all appointments.

22.     Plaintiff did not have a panic attack during her appointment on September 21, 2021. However, her anxiety was very high, and she knew that she would have been calmer had she been accompanied by Ty, and she also knew that by leaving Ty home she risked not having his assistance if she did have a panic attack.

23.     Plaintiff had a third appointment at Brea Eye Care on December 16, 2021. Plaintiff decided that she would bring both Ty and her mother to the third appointment because it was her legally protected right to be accompanied by her service dog and her mother as her companion. She was also reassured by Dr. Doh's statements at her previous appointment that she would be allowed to have her mother accompany her to all appointments. Thus, Plaintiff arrived at Brea Eye Care on December 16, 2021, with both her mother and Ty. Again, she approached the reception desk to check-in and complete her paperwork. Then she sat down in the waiting room with her mother and Ty to wait for her turn to be treated.

24.     Plaintiff waited for a while, and she noticed that a few people who had arrived after her were being seen but she was still waiting. Finally, after waiting for quite some time, an employee came to get Plaintiff and bring her to the pressure testing area. The employee asked Plaintiff to leave Ty with her mother in the waiting room. Plaintiff calmly told the employee that she needed Ty to accompany her throughout her appointment. The employee told Plaintiff that there was another patient in the pressure testing area and that she thought it would be too crowded if she brough Ty with her. Plaintiff told Defendant's employee that she did not mind waiting if the other patient had an issue with Ty. Plaintiff waited, and eventually, Defendant's employee

led her and Ty from the waiting room to the pressure testing area.  Once again, the employee asked Plaintiff's mom to stay in the waiting during the pressure test but said that she would come get her prior to her consultation with the doctor.  Plaintiff agreed, and she and Ty followed the employee to the pressure testing area.

25.    After the pressure test, Plaintiff told the employee that she wanted to go to the waiting room to get her mother prior to going back to the examination room. Defendant's employee asked Plaintiff to go to the examination room and let her get her mother, but based upon her previous experience, Plaintiff decided to get her mother herself.

26.    Plaintiff went to the waiting area to get her mother, but when they turned to go back to the examination room, six or seven of Defendant's employees formed a half circle around Plaintiff, Ty, and her mother blocking the path between the waiting room and the examination room.  One of the employees told Plaintiff that she could not have both her service animal and her mother in the examination room with her. Plaintiff explained that Dr. Doh had specifically told her that she could always have her mother with her during appointments. The employee repeatedly told Plaintiff that it was against the policy of Brea Eye Care to allow both a service dog and a companion at appointments for Plaintiff.  Several employees, including Dr. Doh, corroborated that this was the Brea Eye Care policy. It was clear to Plaintiff that she would not be allowed to attend her appointment with both Ty and her mother, so she told Defendant's employees that she was leaving.  Defendant's employees agreed that it would be best if Plaintiff left.

27.    The incident was extremely embarrassing and upsetting for Plaintiff.  She felt intimidated by Defendant's employees into leaving her appointment simply because she was enforcing her right to be accompanied by her service dog. Following the incident, Plaintiff was in a constant state of high anxiety for four days. She was so upset by the incident that she became physically ill and was unable to function normally for at least four days.

28.    These incidents were traumatic for Plaintiff who was demeaned, intimidated, harassed, and retaliated against for asserting her rights under the ADA and state law.  Most of Defendant's staff members surrounded Plaintiff, prevented her from having both her mom and

service animal with her in her appointment, and asked her to leave.

29.     Plaintiff would like to return to Brea Eye Care to receive ophthalmological treatment because she has been treated there for many years, it is conveniently located to her home, and it is in her insurance network.  However, Plaintiff can only feel comfortable returning to receive care *after* Defendant has implemented proper service animal policies and training of its staff.

**FIRST CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES**
**IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

30.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 29 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

31.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

32.     Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

33.     Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

34.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a

9

disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

35.     Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

36.     Brea Eye Care is a public accommodation within the meaning of the CDPA.  On information and belief, Defendant is the owners, operators, lessors or lessees of the public accommodation.

37.     Defendant made the decision to knowingly and willfully exclude Plaintiff and her service dog from its public accommodation and thereby deny Plaintiff her right of entrance into its place of business with her service dog.  As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based upon Defendant's illegal prohibition of her legally protected use of her service dog.  Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should she attempt to return to these facilities.  Plaintiff is unable to return to Brea Eye Care until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination on a daily basis since August 31, 2021, all to her statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

38.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, including disabled individuals who require the assistance of service animals, from full

1  and equal access to these public facilities.  Such acts and omissions are the cause of humiliation

2  and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as

3  an inferior and second-class citizen and serve to discriminate against her on the sole basis that she

4  is a person with disabilities who requires the assistance of a service animal.

5       39.    Plaintiff wishes to return to patronize Brea Eye Care but is deterred from returning

6  to use these facilities, because the lack of access and the significant policy barriers will

7  foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so

8  long as such acts and omissions of Defendant continue, to achieve equal access to and use of

9  these public facilities.  Therefore, Plaintiff cannot return to patronize Brea Eye Care and its

10  facilities and is deterred from further patronage until these facilities are made properly accessible

11  for disabled persons, including Plaintiff and other disabled persons and disabled individuals who

12  require the assistance of a service animal.

13       40.    The acts of Defendant have proximately caused and will continue to cause

14  irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to

15  Defendant's inaccessible policies.   As to the Defendant that currently own, operate, and/or lease

16  (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to

17  enjoin and eliminate the discriminatory practices that deny full and equal access for disabled

18  persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

19       41.    Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any

20  continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained

21  of and to require Defendant to comply forthwith with the applicable statutory requirements

22  relating to access for disabled persons.  Such injunctive relief is provided by California Civil

23  Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award

24  damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses,

25  and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5

26  and other law, all as hereinafter prayed for.

27       42.    **DAMAGES:**  As a result of the denial of full and equal access to the described

28  facilities and due to the acts and omissions of Defendant in owning, operating, leasing,

1  constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of

2  her civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has

3  suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal

4  injuries, all to her damages per Civil Code section 54.3, including general and statutory damages,

5  and treble damages, as hereinafter stated.  Defendant's actions and omissions to act constitute

6  discrimination against Plaintiff on the basis that she was and is physically disabled and unable,

7  because of the policy barriers created and/or maintained by the Defendant in violation of the

8  subject laws, to use the public facilities on a full and equal basis as other persons.  The violations

9  have deterred Plaintiff from returning to attempt to patronize Brea Eye Care and will continue to

10  cause her damages each day these barriers to access and policy barriers continue to be present.

11      43.    Further, although it is not necessary for Plaintiff to prove wrongful intent in order

12  to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see*

13  *Donald v. Café Royale*, 218 Cal. App. 3d 168, 177 (1990)), Defendant's behavior was intentional.

14  Defendant was aware and/or were made aware of its duties to refrain from establishing

15  discriminatory policies against disabled persons, prior to the filing of this complaint.  Defendant's

16  establishment of its discriminatory policy to deny and restrict entry to persons with service dogs,

17  and its implementation of such a discriminatory policy against Plaintiff, indicate actual and

18  implied malice toward Plaintiff and conscious disregard for her rights and safety.

19      44.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct,

20  Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by

21  statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access

22  for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore

23  seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the

24  provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to

25  require that Defendant make its facilities accessible to all disabled members of the public,

26  justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions

27  of California Code of Civil Procedure section 1021.5 and other applicable law.

28      WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL**
**CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES**
**ACT AS INCORPORATED**
**BY CIVIL CODE SECTION 51(f)**

45.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 44 of this Complaint and incorporates them herein as if separately re-pleaded.

46.    At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

47.    California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of her disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

48.    Brea Eye Clinic is a business establishment within the meaning of the Unruh Act. Defendants are the owners and operators of the business establishment.

49.    Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

50.    Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

51.    The actions and omissions of Defendant as herein alleged constitute a denial of

13

access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory, compensatory and treble damages to Plaintiff, according to proof.

52.     Defendant's behavior was intentional: Defendant waw aware and/or was made aware of its duties to refrain from establishing discriminatory policies against physically disabled persons, prior to the filing of this Complaint.  Defendants' establishment of their discriminatory policy to deny and restrict entry to persons with service dogs, and their implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

53.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

54.     Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

### THIRD CAUSE OF ACTION:
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
### (42 USC §§ 12101 *et seq.*)

55.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 54, above, and incorporates them herein

by reference as if separately repled hereafter.

56.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

57.     The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

58.     Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

59.     Brea Eye Care is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(F).

60.     The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

61.     Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

15

**Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**  For example, in a hospital it would be inappropriate to exclude a service animal from areas such as patient rooms, clinics, cafeterias, or examination rooms.  However, it may be appropriate to exclude a service animal from operating rooms or burn units where the animal's presence may compromise a sterile environment.

*Ibid.*, emphasis in original.  Plaintiff has never requested that her service dog be allowed in operating rooms or burn units.

62.     Defendant has a policy and practice of denying and restricting access to patients with service animals.

63.     On information and belief, as of the date of Plaintiff's most recent visit to Brea Eye Care on or about December 16, 2021, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

64.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

65.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for

16

purposes of this title, which includes but is not limited to any "professional office of a health care provider" or "hospital." 42 USC § 12181(7)(F).

66.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

67.     The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards

17

of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

68.  On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

69.  Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing Brea Eye Clinic and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

70.  Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2).

[i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

18

71.     Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to patronize Brea Eye Clinic, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief she requests.  Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Sarah Nowell prays for judgment and the following specific relief against Defendant:

1.     An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

   a.   From continuing the unlawful acts, conditions, and practices described in this Complaint;

   b.   To modify their policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to enter and use the services of Brea Eye Care;

   c.   That the Court issue preliminary and permanent injunction directing Defendant as current owners, operators, lessors, and/or lessees and/or their agents of the subject

property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

d. An order retaining jurisdiction of this case until Defendant have fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award of civil penalty as against Defendant under California Penal Code § 365.5(c);

4. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5. An award of prejudgment interest pursuant to Civil Code § 3291;

6. Interest on monetary awards as permitted by law; and

7. Grant such other and further relief as this Court may deem just and proper.

Date: February 18, 2022                REIN & CLEFTON

                                        _/s/ Aaron M. Clefton_
                                        By AARON M. CLEFTON, Esq.
                                        Attorneys for Plaintiff
                                        SARAH NOWELL

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1

**JURY DEMAND**

2

     Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

3

Date: February 18, 2022                  REIN & CLEFTON

4

                                   */s/ Aaron M. Clefton*

5

                            By AARON M. CLEFTON, Esq.

                            Attorneys for Plaintiff

6

                            SARAH NOWELL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21